UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 20-cr-231-01-01 |
| VERSUS | JUDGE DONALD E. WALTER |
| MICHAEL S COLLINS JR (01) | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

### Introduction

Michael S. Collins, Jr. ("Defendant") is charged with one count of possession with intent to distribute marijuana, possession of a firearm during a drug trafficking offense, and possession of a firearm not registered to him. The charges arose out of a traffic stop and protective sweep of Defendant's vehicle.

Before the court is Defendant's Motion to Suppress (Doc. 24), which challenges the legality of the stop and warrantless search of the vehicle. For the reasons that follow, it is recommended that Defendant's motion be denied.

### Relevant Facts

The following facts were established by dashcam footage of the traffic stop and by testimony at a suppression hearing. Corporal Rodney Medlin of the Shreveport Police Department was called to the 200 block of Lynbrook after a postal carrier called the police in fear for her safety. The postal worker reported that a black male in an orange Dodge Challenger approached her regarding a package addressed to a residence that the postal worker knew was vacant. The man said he was trying to pick up the package for someone.

The package was not addressed to the man, and he did not have a tracking number for it. The postal worker refused to give the packager to the man, and she noticed at least two firearms in the vehicle that the man was driving. The man followed her back to the post office, so she called the police out of fear for her safety.

Corporal Medlin arrived at the post office and saw Defendant enter an orange Dodge Challenger and begin leaving the post office. Medlin noticed that the vehicle had a temporary tag. The neighborhood was a high-crime area, and many vehicles in that area have switched temporary tags. He radioed the temporary tag number to dispatch, then activated his lights to conduct a traffic stop.

Medlin approached the driver's side of the vehicle and made contact with Defendant. He explained that he was responding to the postal worker's call that Defendant had scared her. He asked Defendant whether there were any guns in the car, and Defendant said no. Medlin asked Defendant why he was contacting the mail carrier, and Defendant said he was just trying to pick up a package. Medlin noticed that Defendant seemed nervous because he was moving around and trying to use his cell phone.

As Medlin was talking to Defendant, dispatch contacted him to tell him that the temporary tag did not match Defendant's vehicle. Dispatch also informed Medlin that the postal worker saw a gun in the vehicle behind the driver's seat. Medlin continued talking to Defendant to distract him until backup arrived.

When the other officers arrived, Medlin asked Defendant again whether there were any weapons in the vehicle. Defendant said he had a gun. Medlin asked Defendant to step out of the vehicle and put his hands on top of the car. Medlin frisked Defendant and found

a large amount of cash on him. Based on Medlin's experience, he knew that a person in possession of weapons and a large amount of cash usually indicates that the person is involved with narcotics. Medlin detained Defendant in the back of his patrol car.

The other officers then looked inside Defendant's car for weapons. Corporal Pettigrew found an AR-15 rifle with a drum and brass catcher (a bag that attaches to the rifle and collects shell casings ejected from the rifle when it is fired). Based on Medlin's experience, he knew that brass catchers are sometimes used by criminals who do not want to leave evidence at a crime scene.

Medlin asked Defendant whether the rifle was stolen, and Defendant replied, "Neither one of them are." That response indicated to Medlin that there was another weapon in the vehicle. Corporal Pettigrew and SFD Investigator Blunton conducted a protective sweep of the vehicle and found another firearm in the driver's seat. Defendant had been sitting on the weapon. Pettigrew and Blunton also found an open backpack in the passenger area of the vehicle that contained gummy candies, which Blunton recognized as edible marijuana gummies. Defendant was then arrested.

Medlin called the post office's OSI to the scene of the traffic stop. Medlin knew from his experience that when a suspicious package is delivered to a vacant house, it normally contains illegal contraband. Medlin had a strong suspicion based on the circumstances that there were narcotics inside the package. OSI later found four pounds of Schedule I high grade marijuana in the package.[1]

---

[1] Defendant does not challenge the search of the package.

**The Motion to Suppress**

Defendant alleges that the search of his vehicle violated his constitutional rights because (1) the guns and drugs were not in plain view; (2) Defendant did not consent to the search; (3) the search was not conducted incidental to a valid arrest; (4) the officers did not have a search warrant; and (5) there were no exigent circumstances to justify the search. Defendant also questions whether Medlin had sufficient information to conduct a Terry stop of Defendant's vehicle.

**Law and Analysis**

    **A. Legality of the Stop**

"The reasonableness of traffic stops and investigative detentions of motorists who are suspected of criminal activity is analyzed under the framework established in Terry v. Ohio, 392 U.S. 1 (1968)." United States v. Rosales-Giron, 592 Fed. Appx. 246, 250 (5th Cir. 2014); quoting United States v. Stevens, 487 F.3d 232, 244 (5th Cir. 2007). "Under Terry, we determine the reasonableness of an investigative stop by examining: (1) whether the officer's action of stopping the vehicle was justified at its inception, and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop." Id.

For a traffic stop to be justified at its inception, an officer need only have reasonable suspicion of illegal activity. United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir. 2005). Police officers must base their reasonable suspicion on "specific and articulable facts," not merely "inarticulate hunches" of wrongdoing. Terry, 392 U.S. at 21-22.

Whether the officer had a "particularized and objective basis for suspecting legal wrongdoing" requires an assessment of the totality of the circumstances. United States v. Arvizu, 534 U.S. 266, 277–78 (2002).

Reasonable suspicion need not be based on a personal observation. It can be based on information provided by an informant, if the information possesses an indicia of reliability. United States v. Roch, 5 F.3d 894, 898 (5th Cir. 1993) The Fifth Circuit evaluates whether an informant's tip provides reasonable suspicion based on several factors, including the credibility and reliability of the informant, the specificity of the information contained in the tip, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity. United States v. Martinez, 486 F.3d 855, 861 (5th Cir. 2007).

Defendant does not challenge the second Terry prong, so the court will address only the first prong of the analysis—whether stopping the vehicle was justified at its inception. Medlin was responding to a call that a postal worker had been approached by someone with firearms visible in the vehicle and then followed the worker to the post office after she refused to give him the package that was not addressed to him. Medlin arrived at the post office to investigate the call when he saw an orange Dodge Challenger that matched the description given during the call. The postal worker who gave the information was reliable because she gave an accurate description of the car, the incident had occurred just prior to Medlin's arrival, and she gave very specific information regarding the incident and the presence of firearms in the car. Accordingly, the court finds that Medlin reasonably

relied on the credible information he received, and he had reasonable suspicion to stop the vehicle and investigate the postal workers' complaint.

### B. Legality of the Protective Sweep

Terry instructs that a police officer who reasonably believes that he is dealing with armed and dangerous individuals may conduct a limited protective search for weapons. United States v. Baker, 47 F.3d 691, 693 (5th Cir. 1995). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id.

In Michigan v. Long, 463 U.S. 1032 (1983), the Supreme Court held that "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Id. at 1049 (quoting Terry, 392 U.S. at 21).

Once the circumstances reasonably warrant officers in believing that weapons may be inside the automobile involved in a Terry stop, the Supreme Court does not require a formulaic approach by the officers to overcome the perceived danger. U.S. v. Brown, 209 Fed. Appx. 450, 454 (2006). A valid search under Michigan v. Long extends to closed containers in a vehicle that would be big enough to contain a weapon. United States v. Morgan, 729 F.3d 1086, 1089 (8th Cir. 2013). The search is still valid even when a suspect

is already handcuffed because the suspect may be released, return to the vehicle, and have access to a weapon. United States v. Edmond, 787 Fed. Appx. 258, 259 (5th Cir. 2019).

Medlin knew the driver of the orange Dodge Challenger had approached a postal worker about a package and that there were firearms visible in the vehicle. The postal worker feared for her safety and contacted the police. Upon making contact with Defendant, Medlin asked twice whether there were any dangerous weapons in the vehicle. Defendant first denied having weapons, but the second time he responded that he did have a weapon. This prompted Medlin to ask him to step out of the car and frisk him. These circumstances reasonably warranted Medlin in believing that Defendant was armed, thus the pat-down was not an illegal search.

**Conclusion**

The firearms and drugs were found during the protective sweep of the passenger area of the vehicle. The initial stop and pat-down of Defendant were justified under Terry, and the subsequent protective sweep of the car for weapons was a valid "Terry pat-down of the car." See Brown, 209 Fed. Appx. at 454-55.

Accordingly,

It is recommended that Defendant's Motion to Suppress (Doc. 24) be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond

to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 2nd day of March, 2021.

_____
Mark L. Hornsby
U.S. Magistrate Judge